JAMES LUMBER COMPANY, INC v J & S CONSTRUCTION, INC

Docket No. 50481. Submitted May 11, 1981, at Lansing.—Decided July 23, 1981.

> James Lumber Company, Inc., brought an action against J & S Construction, Inc., and Steve Serges as a director of J & S, alleging violation of the Michigan building contract fund act. Plaintiff subsequently moved for default and entry of default judgment against J & S, which motions were granted. J & S, however, was insolvent, and the action proceeded to trial against Serges. Following trial, the trial court, sitting as the trier of fact, granted judgment against Serges. Serges moved for a judgment notwithstanding the verdict, which motion was granted and the previous judgment was vacated, Genesee Circuit Court, Phillip C. Elliott, J. Plaintiff appeals. *Held:*

> Plaintiff failed to sustain the burden of proving that Serges acted in violation of the act. The trial court properly granted Serges' motion for a judgment notwithstanding the verdict and vacated the previous judgment.

> Affirmed.

1. TRUSTS — BUILDING CONTRACT FUND — ACTIONS — BURDEN OF PROOF — STATUTES.

> A plaintiff in an action brought under the provisions of the Michigan building contract fund act has the burden of proving that a director of a defendant construction company is personally liable for misuse of money received by the company (MCL 750.151 *et seq.;* MSA 26.331 *et seq.).*

2. TRUSTS — BUILDING CONTRACT FUND — REMEDIES — DAMAGES — STATUTES.

> The purpose of the building contract fund act is to create a trust fund for the benefit of materialmen and others under private construction contracts; the act is not only penal in nature but

REFERENCES FOR POINTS IN HEADNOTES
[1] 13 Am Jur 2d, Building and Construction Contracts §§ 121, 122
[2] 76 Am Jur 2d, Trusts § 19.
[3] 13 Am Jur 2d, Building and Construction Contracts § 18.

also provides for civil damages (MCL 570.151 *et seq.;* MSA 26.331 *et seq.).*

3. TRUSTS — BUILDING CONTRACT FUND — REMEDIES — STATUTES.

The building contract fund act provides no remedy for unpaid laborers, subcontractors, or materialmen where the money received by a contractor actually was used to pay other laborers, subcontractors, or materialmen on the specific job in question (MCL 570.151 *et seq.;* MSA 26.331 *et seq.).*

*Bellairs, Dean, Cooley & Siler,* for plaintiff.

Before: R. M. MAHER, P.J., and ALLEN and CYNAR, JJ.

PER CURIAM. Plaintiff, James Lumber Company, Inc. (hereinafter James Lumber), furnished materials to defendant J & S Construction, Inc. (hereinafter J & S), which were used in several Michigan construction projects. On September 1, 1976, plaintiff initiated this action pursuant to the Michigan building contract fund act, MCL 570.151 *et seq.;* MSA 26.331 *et seq.,* against defendant J & S and defendant Steve Serges as a director of defendant J & S. On March 15, 1977, default judgment was entered against defendant J & S only in the amount of $19,832.19. Defendant J & S is insolvent. The present action proceeded to trial on December 13, 1977, against defendant Serges only. The trial without jury was held in Genesee County Circuit Court. On April 4, 1978, the trial court entered its findings of fact and conclusions of law granting judgment in favor of plaintiff against defendant Serges in the amount of $14,100. Defendant Serges then moved for a judgment notwithstanding the verdict. On November 29, 1978, the trial court granted Serges' motion and vacated the judgment against him. Plaintiff appeals as of right.

The trial court made the following findings of

fact. Defendant Serges was a director of J & S. James Lumber was owed $15,729.53 by J & S for materials furnished on several projects. J & S was paid at least $14,000 on these projects. In its initial opinion, issued April 4, 1978, the trial court held that defendant Serges had the burden of proof on the issue of whether the money which J & S received on the projects was properly paid over to the laborers, subcontractors, and materialmen and that defendant Serges had not met this burden. The trial court's opinion granting defendant Serges' motion for a judgment notwithstanding the verdict indicated that it was not found that defendant Serges personally received or misapplied the money received or that he knew or approved of any conversion of this money. The trial court concluded that the director of a construction company could not be held personally liable under MCL 570.151 *et seq.;* MSA 26.331 *et seq.,* without proof of knowledge or approval of the misuse of the money received by the construction company.

This issue is one of first impression in Michigan. We agree with the trial court that the plaintiff in this case has the burden of proof with regard to his claim that defendant Serges, director of J & S, should be held liable under the Michigan building contract fund act and that plaintiff has not met this burden. The purpose of MCL 570.151 *et seq.;* MSA 26.331 *et seq.* (hereinafter the act), is to create a trust fund for the benefit of materialmen and others under private construction contracts. The act provides a civil remedy as well as a criminal penalty. *National Bank of Detroit v Eames & Brown, Inc,* 396 Mich 611, 621-622; 242 NW2d 412 (1976), *B F Farnell Co v Monahan,* 377 Mich 552; 141 NW2d 58 (1966). If the money received by the contractor in fact was used to pay

laborers, subcontractors, or materialmen on the specific job in question, the purpose of the act is carried out and no remedies under the act, civil or criminal, are available to the other, unpaid laborers, subcontractors, or materialmen. *National Bank of Detroit, supra,* 622.

Although plaintiff was able to produce during trial the J & S articles of incorporation (showing defendant Serges as a director) and several cancelled checks signed or co-signed by defendant Serges payable to defendant Serges or to cash drawn on the J & S corporate account, plaintiff was unable to produce J & S's corporate records.[1] Plaintiff argues in its brief on appeal that because it was shown that J & S was paid at least $14,100 on the projects in question and defendant Serges failed to show how these funds were disbursed, it must be presumed that the projects showed a profit. Plaintiff further argues that presuming J & S made a profit on these projects, J & S and defendant Serges must have violated the act since plaintiff was not paid. However, this Court and the trial court may not presume, without proof, that the projects showed a profit:

" 'Year after year, surveys by Robert Morris Associates show that the contractor is number one on the list of loan losses by industry." *Id.,* 624, quoting Rogers, *The Contractor—Analysis From a Credit Standpoint,* J Commercial Bank Lending 19 (Feb, 1975).

Under the proofs presented during trial by plaintiff, it is possible that J & S used all money received on these projects to pay other laborers,

[1] Interestingly, the lower court record indicates no attempt to have a subpoena issued to defendant Serges to produce the corporate records.

subcontractors, and/or materialmen, that J & S did not make a profit on these projects, and that no violation of the act occurred. Plaintiff asks this Court to engage in a presumption of a violation of the act which a defendant contractor must overcome. This we will not do. The burden of proof is on plaintiff to make out his case. *Kar v Hogan,* 399 Mich 529, 539; 251 NW2d 77 (1976), *A & A Asphalt Paving Co v Pontiac Speedway, Inc,* 363 Mich 634, 638; 110 NW2d 601 (1961). Here, as in *A & A Asphalt Paving,* the mere making of allegations by the plaintiff, without producing evidence to support those allegations, is insufficient to make out plaintiff's case. The trial court's judgment notwithstanding the verdict. and the order vacating the judgment against defendant Serges was proper.

Affirmed.